ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of CATHERINE McDONALD, deceased.

[Decided May 24th, 1926.]

Wills—Accounting—Executor Prays Allowance for a Bill for Services Rendered During Testator's Life—Testatrix Lived With Executor and was Looked Upon as a "Second Mother" —She Promised to "Pay Him Well" for His Services, &c.— Case Comes Within Rule in Disbrow v. Durand, Where Services Rendered in the Family are Considered Reciprocal —Claim Not Allowed.

On exceptions to account.

*Mr. William A. Lord,* for the accountant.

*Mr. Walter C. Ellis,* for the exceptant.

KOCHER, ADVISORY MASTER.

Catherine McDonald died a resident of East Orange on February 11th, 1924, leaving a last will and testament in which Frank E. McGuirk was named as executor. On March 1st, 1924, the will was admitted to probate. The executor having failed to make an accounting, a petition on behalf of the residuary legatee was filed, which resulted in the filing of his account.

In and by his said account the executor prayed allowance for the sum of $2,432 claimed by him as due to him "for work and labor performed and services rendered to testatrix." To this item an exception was taken by the residuary legatee.

Catherine McDonald had been married in Ireland many years ago, but came to this country unaccompanied by her husband. While living in Ireland, Mrs. McDonald became acquainted with the McGuirks, who formerly resided there, and when she came to this country she went to their home to

live, residing with them as a member of their family. From time to time she went out to service as a domestic, but always came back to the McGuirk household as her home. During the portion of the time she was employed as a domestic during daytime only, returning to the McGuirk home to sleep. During the last years of her life one of the McGuirk boys came home to reside, and, by reason of lack of room in the McGuirk household, testatrix rented a room, where she lived, constantly visiting the McGuirks, however.

The executor, Frank E. McGuirk, testified that the service rendered by him covered a period of over twenty-five years; that he arrived at that sum by computing the sum for "a certain length of time" on the basis of $5 a week. He testified that he thought $5 a week was very little, and the minimum sum to which he was entitled. He further testified that at no time did he ever make any request for payment from Mrs. McDonald; that the services performed by him were reading to her, taking her back and forth to New York, and supplying her with newspapers after he entered into the newspaper business. He says that Mrs. McDonald "lived in my house from the time I was a baby in the cradle. I never had any reason to keep any account for taxicab services, gifts to her of papers served to her, and had no reason to render any account. It was services performed at her request for which she told me I would be well paid." Later on he stated that the amount due him was computed at the rate of $8 a month. The accountant further testified, in response to the question, "She was a sort of second mother to you, I suppose?" A. "Just about the same. I was her little boy, as she called it." He further testified, "I couldn't consider her much different than I could my mother, except she was anxious for me to do these things, and was always willing to have me compensated for them."

Charles J. Zegler, who testified on behalf of the accountant, says that he is a teller in the Orange Savings Bank, where Mrs. McDonald had an account; that he was well acquainted with testatrix, and, in a measure, was made a confidant by her; that on numerous occasions she consulted him as to the

advisability of "attaching the name of her boy, as she called him, to her bank account, meaning Frank E. McGuirk, the accountant; that these conversations occurred on numerous occasions;. that he advised her to do so, and that her answer was she would do it." Asked if testatrix gave any reason why she wished to take this step, her reply was that "Mr. McGuirk was so good to her, always talking of him as her boy."

· Mary A. Wheeler, a sister of accountant, testified that her brother looked after testatrix and that "he did a whole lot for her; he wrote and he would read for her, or run errands for her; take her papers. When she got old, here of late years, he used to take her food and visit her down in East Orange, and bring her everything she wanted." She further testified that testatrix lived in her home. "We had her there, just a second mother." She further testified as follows: "I have heard her say that at her death he would be paid." Q. "Did she say how he was to be paid at her death?" A. "She always would have, I think, a little money tucked away. 'When I die my boy will get it, he will be well paid.'"

The picture presented by the testimony in this case is that of a testatrix, a friend of many years' standing, coming into the McGuirk family before the accountant was born, helping to rear him and the rest of the children, regarding them as her own and being regarded by them, as testified to by the accountant himself, as a second mother. There is nothing in the testimony showing any agreement by Mrs. McDonald to pay for the services of accountant, which consisted, from boyhood up, in doing those things which he would naturally do for his own mother, without expectation of charging therefor, and it is evident that testatrix must be regarded, for the purpose of this proceedings, as though she were the mother of the accountant.

The case which would seem to control the matter under consideration is *Disbrow* v. *Durand, 54 N. J. Law 343, 345,* where Chancellor McGill, speaking for the court of errors and appeals, used the following language:

"Ordinarily, where services are rendered and voluntarily accepted, the law will imply a promise upon the part of the recipient to pay for them; but where the services are rendered by members of a family, living as one household, to each other, there will be no such implication from the mere rendition and acceptance of the services. In order to recover for the services, the plaintiff must affirmatively show either that an express contract for the remuneration existed, or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation. The reason of this exception to the ordinary rule is, that the household family relationship is presumed to abound in reciprocal acts of kindness and good-will, which tend to the mutual comfort and convenience of the members of the family and are gratuitously performed; and where that relationship appears, the ordinary implication of a promise to pay for services does not arise because the presumption, which supports such implication, is nullified by the presumption that between members of a household services are gratuitously rendered. The proof of the services, and as well of the family relation, leaves the case in equipoise, from which the plaintiff must remove it, or fail."

The services performed by McGuirk were merely services rendered to one whom he himself states he regarded as his second mother. This being so, the burden is upon accountant to prove an express contract with the testatrix that he should be remunerated for his services. This he has failed to do.

It may have been that testatrix had the intention to compensate him for those services. In her will she devised to him certain lands in Caldwell. McGuirk says that he purchased those lands from her by paying her $2 a week. The evidence on this score is so confusing that little reliance can be placed upon it. The fact is that she conveyed these premises to him during her lifetime.

If it be contended that the rule laid down by Chancellor McGill in *Disbrow* v. *Durand, supra,* must be limited to

blood relatives only, the answer is found in the same case, where it was held that the family relation contemplated in this exception to the ordinary rule is not limited by propinquity of kindred. Where there is a household relation, it will embrace, not only remote kindred, but also those who stand in the place of kindred.

Attention has been called to the case of *In re James Mullin,* recently decided in this court, wherein an executrix was allowed, in part, for services rendered her mother during the lifetime of the testator. That case, however, was decided upon the authority of *DeCamp* v. *Wilson, 31 N. J. Eq. 656,* where the rule is laid down that where a daughter rendered to an old and helpless mother services which, if not rendered by her, must have been obtained from a stranger, for compensation, a presumption will arise that she was to be paid for such service. In the *Mullin Case* accountant unquestionably rendered to decedent indispensable service for a certain period of time, service which, if not rendered by accountant, necessity would have required to have been performed by others, and it was for this reason, and this reason alone, that compensation was allowed in that case.

In the case under consideration the nature and character of the service performed, as well as the family relation, leaves the case in equipoise, from which the accountant must remove it or fail.

The only testimony in the nature of an agreement on the part of testatrix to pay McGuirk for his services are loose phrases, such as he would be compensated after death of testator, and the like. There is nothing even approaching a semblance of a contract, and it is well settled that services rendered on a mere expectation of a legacy is not a good cause of action. *Stone* v. *Todd, 49 N. J. Law 274.*

For the above reasons, I will advise a decree allowing the exception.